FILED
United States Court of Appeals
Tenth Circuit

August 3, 2026

Christopher M. Wolpert
Clerk of Court

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

———————————————

GREENLATINOS; 350 COLORADO; SIERRA CLUB,

    Plaintiffs - Appellants,

v.

SUNCOR ENERGY (U.S.A.), INC.,

    Defendant - Appellee.

No. 25-1243

———————————————

**Appeal from the United States District Court
for the District of Colorado
(D.C. No. 1:24-CV-02164-DDD-SBP)**

———————————————

Kirti Datla of Earthjustice, Washington, D.C. (Ian Coghill, Rachael Jaffe of Earthjustice, Denver, Colorado, with her on the briefs), for Plaintiffs-Appellants.

Hugh Q. Gottschalk of Wheeler Trigg O'Donnell LLP (Eric L. Robertson of Wheeler Trigg O'Donnell LLP; Carlos R. Romo, John H. Bernetich of Williams Weese Pepple & Ferguson PC, with him on the brief), Denver, Colorado, for Defendant-Appellee.

———————————————

Before **BACHARACH**, **KELLY**, and **FEDERICO**, Circuit Judges.

———————————————

**FEDERICO**, Circuit Judge.

Over twenty years ago, the Environmental Protection Agency entered into consent decrees with the Valero Energy Corporation and Conoco Phillips to enforce the Clean Air Act (CAA) with respect to petroleum refineries. Those consent decrees covered refinery plants in Commerce City, Colorado that are now owned and operated by Suncor Energy (U.S.A.), Inc. In spite of this decades-old enforcement initiative by EPA, however, the Commerce City refinery plants continue to emit air pollution. A group of environmental organizations, on behalf of their members affected by the pollution, sued Suncor Energy to enforce the CAA's mandate.

When Congress created a right for citizens to sue for violations of "an emission standard or limitation" under the CAA, 42 U.S.C. § 7604(a), it also created an exception for cases where "the [EPA] Administrator or [a] State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order," *id.* at § 7604(b)(1)(B). If the exception applies, then citizen suits for the same enforcement are barred.

The district court held that the environmental organizations' suit fell within this exception, known as the diligent prosecution bar, and granted Suncor Energy's Rule 12(b)(6) motion to dismiss. The district court's analysis,

2

however, departed from the text enacted by Congress, so exercising our jurisdiction under 28 U.S.C. § 1291, we reverse.

## I

Before we address the merits of this appeal, we will first examine the factual and procedural history of the case. As usual, on review of a Rule 12(b)(6) decision, we take "the bulk" of the relevant facts from the complaint itself. *Levorsen v. Octapharma Plasma, Inc.*, 828 F.3d 1227, 1229 n.2 (10th Cir. 2016). But we also find relevant the statutory and regulatory circumstances that underpin the parties' dispute, and since these details are judicially noticeable when deciding a Rule 12(b)(6) motion, *e.g.*, *United States v. Williams*, 442 F.3d 1259, 1261 (10th Cir. 2006), we will attend to these facts as well. We therefore begin our review of the background with an Act of Congress – the CAA.

## A

In 1970, "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population," Congress passed and President Richard Nixon signed the amendments that now encompass the modern CAA. 42 U.S.C. § 7401(b)(1). *See generally* Brigham Daniels, Andrew P. Follett, & Joshua Davis, *The Making of the Clean Air Act*, 71 Hastings L.J. 901, 941–43 (2020). The CAA is scaffolded by a complex set of authorities (and acronyms) for EPA to promulgate and enforce emissions limitations.

At its foundation lie the National Ambient Air Quality Standards (NAAQS), which EPA sets for certain pollutants at a level that is "requisite to protect the public health" and "public welfare." 42 U.S.C. § 7409(b)(1), (2); *Whitman v. American Trucking Associations*, 531 U.S. 457, 475–76 (2001). The CAA then authorizes EPA to set New Source Performance Standards (NSPS) that establish technology-based standards of performance to achieve emissions limits. 42 U.S.C. § 7411. It also authorizes states to require regulated entities to employ reasonably available control technology (RACT) for pollution control as part of their state implementation plans. 42 U.S.C. § 7502(c).

Separate from the NAAQS, the CAA also regulates certain other, hazardous air pollutants through EPA-set National Emissions Standards for Hazardous Air Pollutants (NESHAPS). 42 U.S.C. § 7412(c)(2). For NESHAPS, EPA establishes technology-based standards for achieving "the maximum degree of reduction," known as maximum achievable control technology (MACT) standards. 42 U.S.C. § 7412(d)(2); *see, e.g.*, 40 C.F.R. § 63.51. Together with the NAAQS and RACT, this alphabet soup is the principal means by which the CAA accomplishes its purpose.

To better understand how these laws operate in practice, consider a regulation found in 40 C.F.R. § 63.670(e), which forms the basis for claim 21 of the organizations' complaint. That regulation establishes standards for the operation of flares "used as a control device for an emission point." 40 C.F.R.

§ 63.670. Among other requirements, the flare must be operated "to maintain the net heating value of flare combustion zone gas ($NHV_{cz}$) at or above the applicable limits," which vary based on the type of flare technology used, "determined on a 15-minute block period basis when regulated material is routed to the flare for at least 15-minutes." *Id.* at § 63.670(e). In other words, to ensure that the flare is actually burning off unhealthy emissions, the flare operator must keep the flare sufficiently hot. This is the MACT requirement described above. *See generally Mossville Environmental Action Now v. EPA*, 370 F.3d 1232, 1235–36 (D.C. Cir. 2004) (describing MACT standards).

At the turn of the century, EPA began a programmatic effort to bring its various authorities to bear on petroleum refineries across the country. *See, e.g.*, Notice of Lodging of Proposed Consent Decree Under Clean Air Act, 77 Fed. Reg. 25750, 25750 (Apr. 30, 2012) ("This is one of numerous national settlements reached as part of the EPA's Clean Air Act Petroleum Refinery Initiative."). According to EPA's website, the petroleum refinery initiative resulted in 37 settlements with companies covering over 95% of the United

States' petroleum refining capacity and 112 refineries.[1] This appeal concerns two of those settlements.

In 2002, EPA entered into a consent decree with Conoco Inc. as part of the agency's petroleum refinery initiative. Doc. 29 in *United States v. Conoco Inc.*, No. 4:01-CV-4430 (S.D. Tex. Apr. 29, 2002); *see also* Notice of Lodging of Consent Decree Under the Clean Air Act, 67 Fed. Reg. 3735 (Jan. 25, 2002). The consent decree required Conoco to take a variety of anti-pollution measures with respect to refineries the company owned and operated across the nation, including one refinery just northwest of Denver in Commerce City. App. VI at 8. Three years later, EPA entered into a similar consent decree with Valero Refining Company, which owned and operated another nearby refinery. Doc. 37 at 10, *United States v. Valero Refining Co.*, No. 5:05-CV-569 (W.D. Tex. Nov. 23, 2005); App. VII at 13; *see also* Notice of Public Comment Period for Proposed Consent Decree Under the Clean Air Act, 70 Fed. Reg. 36410-01 (June 23, 2005).

---

[1] *Petroleum Refinery Nat'l Case Results*, EPA, https://perma.cc/TH4Q-P648. "The Court may take judicial notice of the contents of an agency's website." *Buhendwa v. Regional Transportation District*, 82 F. Supp. 3d 1259, 1262 n.1 (D. Colo. 2015) (citing *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005)); *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 703 n.22 (10th Cir. 2009).

In addition to substantive anti-pollution measures, the consent decrees also contained a variety of procedural features for their enforcement. For example, the consent decrees were each entered with respect to a host of state intervenors, so that enforcement responsibilities would be distributed across federal and state environmental agencies. App. VI at 4 (listing Colorado, Louisiana, Oklahoma, and Montana as state intervenors and parties to the consent decree); App. VII at 4 (listing Colorado, Louisiana, New Jersey, Oklahoma, and Texas as state intervenors and parties to the consent decree). The consent decrees also included a variety of reporting requirements, both on a general periodic basis and for specific incidents. *See, e.g.*, App. VI at 57, 71–72; App. VII at 97, 123–26. And the consent decrees set forth complex schemes of stipulated penalties for violations of the consent decrees' provisions (in addition to the usual possibility of contempt for violating a court order), and a procedure for federal and state agencies to impose the penalties. App. VI at 83–92; App. VII at 166–77. Finally, each consent decree confirmed the district courts' continuing jurisdiction over the case after the entry of the consent decree.

In the years since the entry of the consent decrees, EPA and the Colorado Department of Public Health and Environment have taken a variety of administrative actions to enforce the anti-pollution objective embodied in the

consent decrees with respect to the refineries located in Commerce City.[2] For example, in March 2020, Colorado issued a "compliance order on consent" to address violations of state and federal law, including the consent decrees. App. VIII at 4–89. This administrative action imposed stipulated penalties pursuant to the consent decrees. In June 2023, Colorado issued a "compliance advisory" to again address alleged violations of state and federal law, including the consent decrees. App. IX at 88–143. In February 2024, Colorado issued yet another "compliance order on consent." App. VIII at 91–163. Like the March 2020 compliance order, this one too imposed stipulated penalties pursuant to the consent decrees. Later that year in June, EPA got involved and together with Colorado jointly issued a "notice of violation" alleging violations of state and federal law, including the consent decrees. App. IX at 4–86.

The acronym-filled discussion of regulations and administrative jargon in this record should not obscure the material environmental impact that the refineries in Commerce City were having (and presumably continue to have)

---

[2] In 2003, Suncor purchased the refinery operated by Conoco. In 2005, Suncor purchased the refinery operated by Valero. The refinery formerly operated by Conoco is sometimes referred to as Plants 1 and 3 and other times as the West Plant. The refinery formerly operated by Valero is sometimes referred to as Plant 2 and other times as the East Plant. For simplicity's sake, we will refer to each as the West Plant and the East Plant respectively. After Suncor purchased the West and East Plants, the respective consent decrees were amended to include Suncor as a party bound to them.

on the health and welfare of Coloradans. According to the complaint, which in turn relied on Suncor's own filings made pursuant to the consent decrees, the refineries "emitted approximately 25 tons of hazardous air pollutants, 500 tons of CO, 650 of NOx, 125 tons of PM, 450 tons of volatile organic compounds ('VOCs'), and 230 tons of $SO_2$." App. I at 26. Unsurprisingly, these emissions have had a deleterious effect on the health of nearby residents, who have some of the highest rates of asthma, cardiovascular disease, and diabetes in the state. The refineries' neighbors spend less time outdoors, limit the meals they eat outside, and their daily activities are generally affected by the refineries' belching odors and fumes. On all thirteen metrics that EPA uses to identify disparate environmental effects on vulnerable populations, the area surrounding the Commerce City refineries scored among the highest percentiles in Colorado, ranking among the most heavily polluted regions in the state.

## B

To staunch this flow of emissions in Commerce City, several environmental organizations filed suit in the District of Colorado in August 2024. On October 29 that same year, the environmental organizations filed the first amended and operative complaint. The plaintiffs consisted of three groups: GreenLatinos, "a national nonprofit organization that convenes a broad coalition of Latino leaders committed to addressing environmental,

natural resources, and conservation issues that significantly affect the health and welfare of the Latino community"; Sierra Club, "a national nonprofit organization" that "works to promote clean energy, safeguard the health of our communities, protect wildlife, and preserve our remaining wild places through grassroots activism, public education, lobbying, and legal action"; and 350 Colorado, "a nonprofit organization and grassroots movement working to build a fossil-free future powered by 100% renewable energy." App. I at 19–20. We refer to the plaintiff organizations collectively as the "environmental organizations" for the purposes of this opinion.

Together, the environmental organizations sought redress on behalf of themselves and their members against Suncor Energy, the company that now owns and operates the Commerce City refineries. They invoked what is known as the "citizen suit" provision of the CAA, which allows "any person" to "commence a civil action. . . against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of [] an emission standard or limitation under" the Act. 42 U.S.C. § 7604(a)(1). The operative complaint made 28 claims for relief, each alleging various violations of the CAA and its implementing regulations. The complaint also alleged violations of the federal consent decrees previously mentioned.

To give some texture to the kind of claim that the environmental organizations are making, consider another example. Claim 25 alleged that a

heater unit known as H-2101 does not comply with the requirements of the West Plant Consent Decree. The West Plant Consent Decree required the refinery operator "to reduce the overall NOx emissions from Controlled Heaters and Boilers at their refineries in an amount greater than or equal to 1,526 tons per year" by, among other things, installing technologies that would "reduce NOx emissions to 0.040 lbs per mmBTU or lower." App. VI at 21. According to the complaint, however, H-2101 was technologically incapable of meeting this emissions limit. So the complaint alleges that from the moment H-2101 was installed in January 2006, Suncor Energy has been in unbroken violation of the terms of the consent decree.

Suncor Energy filed a motion to dismiss under Rule 12(b)(1) for want of jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(1), (6). Suncor argued first that the environmental organizations could not demonstrate an Article III injury-in-fact, so they lacked standing to pursue their claims. Suncor next argued that the environmental organizations' claims were jurisdictionally barred by 42 U.S.C. § 7604(b)(1)(B), which prevents private parties from suing under the CAA if a government entity is "diligently prosecuting" CAA violations as well. Suncor pointed to the consent decrees filed in the Texas district courts as the basis for applying the diligent-prosecution bar, asserting that "[p]ermitting Plaintiffs to pursue claims alleging the same violations of the Federal Court

Consent Decrees would undercut the policies" underlying the diligent prosecution bar, and so the bar applied to the environmental organizations' citizen suit. App. I at 169.

The district court granted Suncor's motion to dismiss, but only on Rule 12(b)(6) grounds. On standing, the district court concluded the environmental organizations had standing to pursue their claims.[3] On diligent prosecution, however, the district court rejected the environmental organizations' protestations that the bar did not apply. "Taken together," wrote the district court, "the consent decrees, compliance orders, compliance advisories, and notice of violation serve as ongoing enforcement actions by the EPA and Colorado against Defendant for alleged violations of the Act. As a result, Plaintiffs' citizen suit, which consists of identical or substantially similar allegations, is barred by statute." App. X at 295.

The district court therefore dismissed the environmental organizations' operative complaint and entered final judgment for Suncor on May 23, 2025. This timely appeal followed.

---

[3] Suncor does not ask that we revisit the environmental organizations' standing. Our independent review of the record discloses no basis for disturbing the district court's conclusion.

## II

Before we turn to the substance of this rather technical appeal, we will first describe our standard of review. We will then return to the CAA itself and introduce some basic concepts and the key pieces of the statutory text that frame the parties' dispute. Finally, we will address the principal issue on appeal: whether the environmental organizations' complaint is precluded by the diligent prosecution bar. We conclude that the district court incorrectly analyzed the diligent prosecution bar, and its judgment is therefore reversed.

## A

"We review a district court's grant of a motion to dismiss de novo." *Hennessey v. University of Kansas Hospital Authority*, 53 F.4th 516, 527 (10th Cir. 2016). To survive Rule 12(b)(6) and in turn to obtain relief from a dismissal on appeal, a "plaintiff must state a claim that is facially plausible; that is, the plaintiff must 'plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Messerli v. AW Distributing, Inc.*, 153 F.4th 1077, 1081 (10th Cir. 2025) (alteration in original, quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Suncor Energy did not move for Rule 12(b)(6) dismissal on diligent-prosecution bar grounds in the district court; instead, it argued that the bar was jurisdictional and so the suit ought to be dismissed on Rule 12(b)(1) grounds. The district court, however, disposed of the diligent prosecution

13

bar under Rule 12(b)(6). Although the distinction rarely matters for appellate purposes, *Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004), had the district court granted Suncor's Rule 12(b)(1) motion, we would have reviewed the district court's "findings of jurisdictional fact for clear error." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). The district court did not explain its reasons for analyzing the Rule 12(b)(1) motion under Rule 12(b)(6).

Nonetheless, we think the district court was correct to do so: the diligent prosecution bar is not jurisdictional. In the district court, Suncor relied heavily on cases that applied the bar as jurisdictional with little or no reasoning, "exactly the sort of 'drive-by jurisdictional rulings' the [Supreme] Court tells us to view with a jaundiced eye." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1159 (10th Cir. 2013) (en banc) (Gorsuch, J., concurring). The latest of those cases, *Karr v. Hefner*, predated the Supreme Court's more recent drum-beat that only a clear statement by Congress can suffice to render a requirement jurisdictional. *Compare* 475 F.3d 1192, 1197–98 (10th Cir. 2007) (omitting any discussion of whether the diligent prosecution bar is jurisdictional), *with United States v. Wong*, 575 U.S. 402, 409–10 (2015) (noting "procedural rules, including time bars, cabin a court's power only if Congress has 'clearly state[d]' as much" (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)) (alteration in original)).

14

And we find little in the text of the diligent prosecution provision to satisfy this "high bar." *Wong*, 575 U.S. at 409. The provision does not itself use the term "jurisdiction," and indeed, another provision in the same statutory section does. *Compare* 42 U.S.C. § 7604(a), *with id.* at § 7604(b).

Nearly all our sister circuits, so far as we can tell, agree: the diligent prosecution bar is non-jurisdictional. *See, e.g.*, *Group Against Smog & Pollution, Inc. (GASP) v. Shenango Inc.*, 810 F.3d 116, 122–26 (3d Cir. 2016) (holding that the bar is non-jurisdictional even though parties did not raise the issue); *Cebollero-Bertran v. Puerto Rico Aqueduct & Sewer Authority*, 4 F.4th 63, 70–72 (1st Cir. 2021) (construing similar language in the Clean Water Act, 33 U.S.C. § 1365 (CWA)); *South River Watershed Alliance, Inc. v. Dekalb County*, 69 F.4th 809, 821–23 (11th Cir. 2023) (CWA); *Naturaland Trust v. Dakota Finance LLC*, 41 F.4th 342, 346–48 (4th Cir. 2022) (holding prior cases construing CWA's diligent prosecution bar as jurisdictional were abrogated by "Supreme Court's current approach to such matters"); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 491–92 (7th Cir. 2011) (construing similar language in the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(b)(1)(B) (RCRA)).

"The distinction matters. Jurisdictional requirements cannot be waived or forfeited, must be raised by courts *sua sponte*, and . . . do not allow for equitable exceptions." *Boechler, P.C. v. Commissioner of Internal Revenue*, 596 U.S. 199, 203 (2022); *see also Adkins*, 644 F.3d at 491 ("The distinction is vital."). With respect to the diligent prosecution bar, the distinction affects which party bears the burden of asserting it and consequently whether a party's failure to timely invoke the bar can be held to have waived it. With these thoughts, we proceed to apply the standard of review applicable to Rule 12(b)(6) decisions.

### B

We turn now to address the historical background that produced the CAA statutory text. Although the policy debates that animated the CAA era do not alter our legal analysis, they do appropriately contextualize it.

Historically, people affected by pollution, like the neighbors of the Commerce City refinery, might have relied on the common law system of torts to deter pollution and obtain redress for pollution-related injuries. Mark Latham, Victor E. Schwartz, & Christopher E. Appel, *The Intersection of Tort and Environmental Law: Where the Twains Should Meet and Depart*, 80 Fordham L. Rev. 737, 772 (2011). But over time, it became apparent that the individualized and causation-bound nature of tort liability could not fully satisfy the pressing environmental needs of the day. *See, e.g.*, Palma J. Strand,

16

Note, *The Inapplicability of Traditional Tort Analysis to Environmental Risks: The Example of Toxic Waste Pollution Victim Compensation*, 35 Stan. L. Rev. 575, 577–80, 583–84 (1983). In its place arose a robust statutory regime for regulatory enforcement, giving administrative agencies authority to prevent, deter, and remedy environmental harm. Latham, Schwartz, & Appel, *The Intersection of Tort and Environmental Law*, at 743–45 (identifying "a series of modern federal environmental statutes" as ushering in "the new field of environmental law"). The CAA was one of the first statutes enacted as part of this experiment with public environmental law. Daniels, Follett, & Davis, *The Making of the Clean Air Act*, at 903–04.

Congress did not entirely displace the role of private persons in vindicating its environmental objectives. The CAA provides that "any person may commence a civil action on his own behalf [] against any person . . . who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation." 42 U.S.C. § 7604(a)(1). This clause is known as the citizen suit provision. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 58–59 (1987) (describing similar provision in CWA). Although compensatory damages are generally understood to not be available under citizen suit provisions, *Mulcahey v. Columbia Organic*

17

*Chemicals Co., Inc.*, 29 F.3d 148, 152 (4th Cir. 1994), plaintiffs can seek equitable relief, *Gwaltney*, 484 U.S. at 61–62, and extract civil penalties to deter pollution, *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000).

The citizen suit provision has proven structurally vital for the greater statutory scheme. *Accord* Daniels, Follett, & Davis, *The Making of the Clean Air Act*, at 930–31. Its most obvious contribution to environmental law has been as a reserve guarantor of congressional objectives if the executive branch is unable or unwilling to advance them. *Id.*; *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519, 526 (5th Cir. 2008); *Adkins*, 644 F.3d at 499. Relatedly, the specter of citizen suits also serves as a "spur" to government action. *Black Warrior Riverkeeper, Inc. v. Cherokee Mining, LLC*, 548 F.3d 986, 992 (11th Cir. 2008) (quoting S. Rep. No. 99-50, 28 (1985)). And since Congress also required putative plaintiffs to provide EPA with notice of their anticipated citizen suit 60 days in advance of filing, 42 U.S.C. § 7604(b)(1)(A), the citizen suit provision incentivizes private plaintiffs to investigate CAA violations and then relay that information to EPA – complementing and assisting the government's investigatory responsibility. So, although in form it bears little resemblance to its tort ancestors, in function the citizen suit builds on a long history of private impulses advancing public goods.

Congress also acted, however, to preserve the primacy of government agencies in environmental law enforcement. Citizen suits are barred under the CAA "if the [EPA] Administrator or [a] State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right." 42 U.S.C. § 7604(b)(1)(B). As already referenced above, this clause is known as the diligent prosecution bar. *GASP*, 810 F.3d at 121 n.4. "The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action." *Gwaltney*, 484 U.S. at 60. In other words, although private parties can play a "supplementary" and "interstitial" role in the environmental legal universe, administrative agencies retain primacy within that ecosystem. *Id.* at 60–61.

The diligent prosecution bar shares some distinguishing characteristics with other preclusive doctrines of the common law. Just as issue preclusion protects parties "from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions," *Montana v. United States*, 440 U.S. 147, 153–54 (1979), so too does the diligent prosecution bar protect regulated entities from duplicative, expensive, and perhaps inconsistent

19

lawsuits. *North and South Rivers Watershed Ass'n, Inc. v. Town of Scituate*, 949 F.2d 552, 556 (1st Cir. 1991); *Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewerage Dist.*, 382 F.3d 743, 762–63 (7th Cir. 2004) (likening diligent prosecution bar to res judicata). And in doing so, the bar incentivizes regulated entities to cooperate with administrative agencies seeking to enforce the environmental laws. But as with other preclusive doctrines, tension can arise and subsist between the principle of access to justice and the principle of repose. *Cf. Montana*, 440 U.S. at 164 n.11.

This appeal brings the friction between citizen suits and the diligent prosecution bar into sharp focus. On the one hand, the environmental organizations emphasize the care with which Congress balanced the diligent prosecution bar against the citizen suit provision in the statutory text. On their theory of the bar, the text sets forth three steps, none of which are satisfied here, for deciding whether the bar precludes a citizen suit. First, the court must identify a present judicial action, which the environmental organizations argue would not include the Texas consent decrees or any subsequent administrative actions. Second, the court must ensure that the standards and limitations raised in the potentially preclusive judicial action are the same as the ones in the citizen suit, which the environmental organizations also argue would exclude the Texas consent decrees and subsequent administrative actions. Only after these two steps have been satisfied should the district court consider

whether the judicial action is being diligently prosecuted. *See also South River Watershed Alliance,* 69 F.4th at 824 (describing these elements as "steps," and separating diligent prosecution from antecedent questions).

On the other hand, Suncor Energy argues that this lawsuit is "a duplicative and unnecessary action to enforce alleged violations of the same emission standards currently being enforced by the federal government and the State of Colorado." Resp. Br. at 11. Suncor primarily invokes the "clear Congressional intent that citizen suits should not 'intrude' on EPA's and Colorado's 'primary enforcement authority.'" Resp. Br. at 28 (quoting *Karr,* 475 F.3d at 1197).

We largely agree with the environmental organizations. "The issues are complicated – so for the details, read on." *Haaland v. Brackeen,* 599 U.S. 255, 264 (2023). But in a nutshell, we latch onto the environmental organizations' text-based theory of the statute over Suncor Energy's purpose-driven approach. The purpose-driven approach led the district court to apply a diligent prosecution bar that Congress did not enact in the CAA. We therefore reverse the judgment and remand for further proceedings.

## C

We now address the core substance of this appeal – the meaning of the diligent prosecution bar in the CAA. As foreshadowed, we agree with the environmental organizations that the diligent prosecution bar sets forth

distinct elements (or "steps," as some courts frame them). *South River Watershed Alliance*, 69 F.4th at 823–24; *Ohio Valley Environmental Coalition, Inc. v. Maple Coal Co.*, 808 F. Supp. 2d 868, 883 (S.D. W. Va. 2011); *Connecticut Fund for Environment v. Contract Plating Co., Inc.*, 631 F. Supp. 1291, 1293 (D. Conn. 1986). We take each step in turn.

1

The environmental organizations argue first that the diligent prosecution bar can be triggered only by a civil judicial action that is presently being enforced. We agree, but we also reject the environmental organizations' argument that consent decrees do not satisfy this requirement.

The text of the statute would appear to admit of little else. The diligent prosecution bar is triggered when EPA or a state "has commenced and is diligently prosecuting a civil action in a court." 42 U.S.C. § 7604(b)(1)(B). This court and the Supreme Court have repeatedly stressed that "Congress' use of a verb tense is significant in construing statutes." *United States v. Wilson*, 503 U.S. 329, 333 (1992); *see also Carr v. United States*, 560 U.S. 438, 448 (2010); *United States v. Husted*, 545 F.3d 1240, 1243–44 (10th Cir. 2008). Congress' choice of verb tense here unambiguously refers to something that is current or present, even if it began at some point in the past. The term "has commenced" is phrased in the present perfect tense, *see* 42 U.S.C. § 7604(b)(1)(B), which usually "conveys to a listener that the event in question continues to be true or

22

valid." *Hewitt v. United States*, 606 U.S. 419, 429 (2025). And that phrase is followed by the present tense "is." *See* 42 U.S.C. § 7604(b)(1)(B). Congress was thus focused on actions that are *presently* being prosecuted. Indeed, the Supreme Court reached a similar conclusion when construing the Clean Water Act's citizen suit provision as not reaching wholly *past* actions. *Gwaltney*, 484 U.S. at 59 ("One of the most striking indicia of the prospective orientation of the citizen suit is the pervasive use of the present tense throughout § 505.").

Turning from verbs to objects, the phrase "civil action in a court of the United States or a State" is likewise unambiguous. 42 U.S.C. § 7604(b)(1)(B). The term "civil action" refers to "a proceeding in a judicial court, not an administrative" forum. *Western Watersheds Project v. U.S. Dept. of the Interior*, 677 F.3d 922, 926 (9th Cir. 2012); *see also Patham Const. Co. v. Knox County Hospital Ass'n*, 326 N.E.2d 844, 854 (Ind. Ct. App. 1975) ("The term 'action' in its usual sense, at least its usual legal sense, means a suit brought in court, a formal complaint within the jurisdiction of a court of law."). The word "court" also usually excludes administrative forums. *Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215, 217 (3d Cir. 1979) ("Generally, the word 'court' in a statute is held to refer only to the tribunals of the judiciary and not to those of an executive agency with quasi-judicial powers."). Also, the statute expressly provides for otherwise-barred citizen suit plaintiffs to intervene in the pending government-initiated action – a mechanism which does not exist, so far as we

23

know, in administrative proceedings. *Student Public Interest Research Group of N.J., Inc. v. Fritzche, Dodge & Olcott, Inc.*, 759 F.2d 1131, 1138–39 (3d Cir. 1985).[4]

Putting these phrases together, only one thing can trigger the diligent prosecution bar: an action in a judicial forum that is presently being enforced. Other tools that are related to that judicial action (administrative actions, for example) may well be relevant to determining whether that presently enforced judicial action is being diligently prosecuted. But only the standards and limitations found in that presently enforced judicial action can preclude a citizen suit under the diligent prosecution bar.

Our conclusion is buttressed by the fact that other diligent prosecution bars found in other environmental statutes enumerate administrative actions explicitly as a basis for preclusion. 33 U.S.C. § 1319(g)(6) (CWA); 42 U.S.C. § 6972(b)(2)(B)(iv) (RCRA); 42 U.S.C. § 11046(e) (Emergency Planning &

---

[4] Some room for uncertainty can be found on the outer boundaries of the phrase "civil action," and particularly with respect to state-level bodies. *See, e.g.*, *Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215 (3d Cir. 1979) (deciding whether Pennsylvania Environmental Hearing Board is a court for the purposes of § 7604(b)(1)(B)). We have no occasion in this case to reach those outer boundaries, however, for no one argues that EPA agency proceedings, or those of the Colorado Department of Public Health and Environment, are court proceedings.

Community Right-to-Know Act).[5] The omission of similar language in the CAA – arguably the foundational environmental statute – speaks volumes. Applying this judicial-action-only standard, the only actions or activities in the record that would trigger the bar in this case are the two Texas consent decrees.

Suncor does not really dispute any of this on appeal. But its position with respect to this first element or step of the diligent prosecution bar is hard to pin down. At times Suncor appears to acknowledge that the relevant question is whether the consent decrees, not the later administrative actions, are being diligently enforced. But Suncor's position shifts slightly when it argues that "the Court must consider any agency enforcement *after* entry of the Consent Decrees – not just the standards enforced in the Consent Decrees themselves – to determine the extent of overlap between allegations in enforcement proceedings and in a citizen suit." Resp Br. at 49. In other words, Suncor asks us to consider the standards and limitations being enforced in administrative actions, rather than simply the actions pending in court. This argument or rule does not reflect the text Congress enacted. The CAA does not ask whether EPA

---

[5] The Comprehensive Environmental Response, Compensation, & Liability Act (CERCLA) does not explicitly refer to administrative actions – instead, it refers only to "an action." 42 U.S.C. § 9659(d)(2). We attribute significance to Congress' adornment of the CAA's diligent prosecution bar with the adjective "civil" before the noun "action" while deciding not to make a similar choice in CERCLA.

is diligently prosecuting a standard or limitation in any forum at all; it asks instead whether EPA is diligently prosecuting a standard or limitation "in a court." 42 U.S.C. § 7604(b)(1)(B).

The environmental organizations, for their part, make an equally bold argument for evading the diligent prosecution bar. They turn to the verb phrase "has commenced and is" to argue that consent decrees are not presently ongoing and therefore do not satisfy the first step of the diligent prosecution bar analysis. To better understand the nature of the environmental organizations' argument, we must briefly examine the nature of consent decrees before rejecting their argument.

"A consent decree is a settlement agreement subject to continued judicial policing." *United States v. Board of County Commissioners of Hamilton County*, 937 F.3d 679 (6th Cir. 2019) (alterations adopted, internal quotations omitted). "A consent decree is a hybrid; it is both a settlement and an injunction," *Conservation Northwest v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013), "a dual character that has resulted in different treatment for different purposes," *Local No. 93, Intern. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519 (1986). Whatever the precise ontology, the Supreme Court has consistently admonished that consent decrees possess at least two defining characteristics: the imprimatur of the judicial court, and the power of that court to review the decree on an ongoing basis. *United States v. Swift & Co.*,

286 U.S. 106, 114–15 (1932); *Rufo v. Inmates Suffolk County Jail*, 502 U.S. 367, 378 (1992). So, the question of whether consent decrees can (at least in some circumstances) trigger the diligent prosecution bar as an ongoing civil action would seem to answer itself – by definition, they can.

The environmental organizations rely on one case where this court said, "a district court's order approving the consent decree is tantamount to a final judgment on the merits." *Jackson v. Los Lunas Community Program*, 880 F.3d 1176, 1198 (10th Cir. 2018). But "[t]he fact that a consent decree *looks* like a judgment" does not render it a closed thing of the past for all purposes under the law. *Local No. 93*, 478 U.S. at 523. The statement in *Jackson* came in the context of assessing this court's jurisdiction over a final judgment and whether to apply a flexible standard for seeking modification to a consent decree, as done with respect to injunctions. *Jackson*, 880 F.3d at 1198. That context (and the statutory language and history) is quite distinct from the diligent prosecution bar context. And in any event, *Jackson* itself contemplated that in at least some circumstances, the final judgment in a case can result in an order that continues to be enforced by the parties and the court. *See, e.g.*, *id.* at 1199 (discussing applicability of Rule 60 to consent decrees).

The environmental organizations cite no authority, and we have found none, for the proposition that consent decrees cannot trigger the diligent prosecution bar. To the contrary, the majority of cases cited by both parties

27

uncontroversially apply the diligent prosecution bar's analysis to consent decrees. *See, e.g.*, *Piney Run Preservation Ass'n (Piney Run II) v. County Comm'rs*, 523 F.3d 453, 459 (4th Cir. 2008). And the CAA confers a right on citizen plaintiffs to intervene in an environmental suit where the diligent prosecution bar would otherwise apply, 42 U.S.C. § 7604(b)(1)(B), which some courts have applied even after a consent decree is adopted. *See, e.g.*, *United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013); *United States v. Pacific Gas & Elec.*, 776 F. Supp. 2d 1007 (N.D. Cal. 2011). Assuming without deciding that these cases are correct, it would be anomalous to say that the diligent-prosecution bar does not apply so the citizen suit can go forward, but simultaneously say that the citizen plaintiffs can intervene in the original suit. The CAA contemplates citizen suits and intervention as mutually exclusive possibilities, not overlapping ones. 42 U.S.C. § 7604(b)(1)(B).

The environmental organizations do cite several cases that found no diligent prosecution in the context of various negotiated or settled agreements. *See, e.g.*, *Citizens for a Better Environment-California v. Union Oil Co. of California*, 83 F.3d 1111, 1118 (9th Cir. 1996); *Knee Deep Cattle Co., Inc. v. Bindana Inv. Co. Ltd.*, 94 F.3d 514, 516 (9th Cir. 1996). But none of them held that such agreed resolutions can *never* satisfy the diligent prosecution bar. Instead, they appear at most to hold that the agreements in those cases were not being diligently enforced.

The environmental organizations also cite Judge Newsom's concurrence in *South River Watershed Alliance*, where he saw "reasonable arguments going both ways" on this issue. 69 F.4th at 830 (Newsom, J., concurring). However, we conclude the unbroken practice of federal courts confirms that a civil action can continue to be diligently prosecuted even after final judgment, so long as that judgment contemplates future conduct by the parties and the participation of the courts. Consent decrees fit this bill. *Swift*, 286 U.S. at 114–15.[6] Our conclusion is confirmed by the fact that in other diligent prosecution bars, Congress clarified that consent decrees are part of the universe of judicial actions that can preclude citizen suits, rather than enumerating them as a separate category altogether. *See, e.g.*, 42 U.S.C. § 6972(b)(2)(B)(iv) (RCRA).

In sum, only the standards or limitations being diligently prosecuted "in a court" are preclusive. 42 U.S.C. § 7604(b)(1)(B). The judicially approved and monitored consent decrees count for this purpose. The administrative actions upon which Suncor Energy relies, however, are not actions which alone trigger

---

[6] We do not mean to say that every consent decree automatically satisfies the present prosecution requirement. We deal here with consent decrees entered over twenty years ago. What matters is whether a consent decree is presently being enforced, either through the procedural mechanisms in the decree or through separate administrative actions (such as the enforcement of stipulated penalties provided in the consent decree). A consent decree that has lain dormant for years does not indefinitely satisfy present prosecution and may also fail the separate diligence requirement.

the diligent prosecution bar. Though, they may be relevant to determining whether the other steps in the preclusion analysis are met.

2

We turn now to the second step in the diligent prosecution bar analysis: identifying *which* standards or limitations are preclusive. According to the environmental organizations, the standard or limitation in the judicial action must be the same as the one in the citizen suit complaint in order to preclude the citizen suit. Again, we agree, but will remand for the district court to apply the correct standard in the first instance.

When inquiring into the nature of a noun in statutory text, the article preceding the noun can shed light on the question. *See, e.g., Niz-Chavez v. Garland*, 593 U.S. 155, 160–65 (2021). The nouns "standard" and "limitation" in the diligent prosecution bar are preceded by the word "the." 42 U.S.C. § 7604(b)(1)(B). "The" is a definite article, The Chicago Manual of Style § 5.75 (18th ed. 2024), and definite articles usually refer to something already "specifically provided for." *Work v. United States ex rel. McAlester-Edwards Coal Co.*, 262 U.S. 200, 208 (1923); *Nielsen v. Preap*, 586 U.S. 392, 408 (2019); *United States v. Lopez*, 131 F.4th 1114, 1132–33 (10th Cir. 2025). Here, only the standards, limitations, or orders that are raised in the complaint could qualify, because those are the only ones already "specifically provided for" in the cross-referenced cause of action. 42 U.S.C. § 7604(b) ("No action may be

30

commenced [] under subsection (a)(1). . .”). We hold that the statutory text requires the standards and limitations in the citizen suit complaint must be the *same* as the ones raised in the proffered judicial action in order for the diligent prosecution bar to apply.

Our conclusion aligns with courts that have considered the same or similar questions. *California Sportsfishing Protection Alliance v. Chico Scrap Metal, Inc.*, 728 F.3d 868, 874 (9th Cir. 2013) (CWA); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 894 F.3d 1030, 1039 (9th Cir. 2018) ("The explicit textual cross-references between subsections (a) and (b), and the use of the definite article ('the standard, limitation, or order'), signify with precision that the diligent prosecution bar forecloses only citizen suits that seek to enforce the same 'standard, limitation, or order' as the government enforcement action." (footnote and emphases omitted, quoting statute)). We find these decisions from the Ninth Circuit persuasive.

Recall that the district court applied the diligent prosecution bar to the environmental organizations' suit because it "consists of identical or substantially similar allegations." App. X at 295. Our holding does not permit application of the diligent prosecution bar to merely "substantially similar" standards or limitations. The district court's application of the diligent prosecution bar to all of the environmental organizations' claims, even those

31

that are not identical to the standards and limitations enforced in the consent decree, was error.

Suncor's response is to argue purpose over text. The portions of their brief dedicated to the sameness requirement contain no reference to the text of the statute whatsoever. Instead, Suncor makes the more general point that the purpose of the diligent prosecution bar would be compromised if we did not construe it broadly to include related, but not identical, standards and limitations. Suncor principally relies on two cases, one from the Supreme Court and one from this circuit, to build a theory of statutory purpose, but neither case moves the needle in the direction of Suncor.

First, Suncor quotes extensively from the Supreme Court's decision in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987). Suncor's argument goes something like this: EPA has discretion to choose which standards and limitations to enforce and the Supreme Court in *Gwaltney* warned against second-guessing that discretion through citizen suits. But as an initial matter, the Supreme Court dealt there with a question quite distinct from the one here, whether the Clean Water Act's citizen suit provision allowed suits "for wholly past violations." *Id.* at 52. The Court therefore focused on the language of the citizen suit provision, not the diligent

prosecution bar, and addressed the latter only to shed light on the former. *Id.* at 60.[7] *Gwaltney* is therefore of limited value for Suncor.

More fundamentally, Suncor quotes those portions of *Gwaltney* that rely heavily on legislative history and purpose rather than text. *See, e.g., id.* at 60 ("The bar on citizen suits when governmental enforcement action is under way suggests that the citizen suit is meant to supplement rather than to supplant governmental action. The legislative history of the Act reinforces this view of the role of the citizen suit."). Even setting aside the well-known problems with relying on legislative history to discern a statutory purpose, Congress itself rejected *Gwaltney*'s line of reasoning when it amended the CAA in 1990 to permit citizen suits for past violations. *Environment Texas Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 529 n.18 (5th Cir. 2016). So even for those who may find it useful to peruse legislative history in search of a statutory purpose, *Gwaltney* is unhelpful to their perusal.

Of course, this court has relied on *Gwaltney* before. In *Karr v. Hefner*, which Suncor also quotes extensively, this court broadened the reach of *Gwaltney*'s already broad language. 475 F.3d 1192, 1196–98 (10th Cir. 2007) ("Congress did not intend for them [citizen suits] to be even 'potentially

---

[7] Indeed, so far as we know, the Supreme Court has never squarely addressed the diligent prosecution bar of any environmental statute.

intrusive' on agency discretion." (quoting *Gwaltney*, 484 U.S. at 61)). As with *Gwaltney*, we are of course bound by *Karr*'s holdings. But again, we do not think those holdings get Suncor over the line. *Karr*'s principal holding was that "our evaluation of the EPA's diligence is quite deferential." *Id.* at 1198. But *Karr* barely addressed the antecedent question: what must EPA be diligent about?

On that score, *Karr* quoted the District of Connecticut: "[A] federal court ought not to allow a citizens' suit to proceed merely because a prior pending state suit has not alleged as many separate violations of the Act as has the citizens' suit and therefore seeks to impose a less substantial civil penalty on the defendant." *Connecticut Fund*, 631 F. Supp. at 1293. But four paragraphs prior to the quoted language, the same district court applied this rule: "the court must determine whether any suit by the state (or the EPA Administrator) to enforce *the same* 'standard, order, or limitation' was *pending* in federal or state court on the date that the citizens' suit was commenced." *Id.* (emphases added) (quoting Clean Water Act). We therefore read the language from *Connecticut Fund*, quoted in *Karr*, to mean that while a pending government-initiated suit need not state the same number of *violations* as the citizen suit, it must state at least one violation of the *same* standard or limitation in order

to be preclusive.[8] Our holding today is therefore in harmony with both *Connecticut Fund* and *Karr*. We apply the presumption of diligent enforcement only after identifying, at steps one and two of the analysis, the same standard or limitation in a presently enforced judicial action. *Id.*

There are other arguments Suncor raises, but none persuade. For example, Suncor points us to *Group Against Smog and Pollution, Inc. v. Shenango Inc.*, where the Third Circuit rejected "a literal, inflexible, or grammatical interpretation" of the CAA. 810 F.3d 116, 129 (3d Cir. 2016). Respectfully, we disagree with this atextual approach and instead embrace the

---

[8] To better illustrate our understanding of *Karr* and *Connecticut Fund*, consider two hypotheticals. In the first example, EPA promulgates Regulation 1 that sets standards and limitations for both heaters and boilers. EPA then enters into a consent decree enforcing Regulation 1 as to a polluter's boilers, but not their heaters. Thereafter, a citizen plaintiff comes along, seeking to enforce Regulation 1 as to the heaters. The diligent prosecution bar applies (assuming EPA's prosecution of the consent decree is diligent), because although EPA and the citizen plaintiff are seeking to remedy different *violations*, they are both seeking to enforce the *same standard or limitation*. *See* 42 U.S.C. § 7604(f). But let's change the facts slightly for the second example: this time, the citizen plaintiff comes along and wants to enforce Regulation 2, as to boilers, heaters, or whatever else. The diligent prosecution bar would not apply, because the citizen suit is seeking to enforce a different standard or limitation altogether.

Our construction of the text therefore reflects the balance struck by Congress in barring certain citizen suits. EPA's bargaining discretion is preserved up to a point: the decision to forgo enforcing a particular standard or limitation up to its maximum enforcement capacity will be preclusive, but the decision to entirely forgo enforcing a standard or limitation will not.

35

meaning fixed by Congress in the text. From the text, we discern that meaning by reference to what a reasonably well-informed reader of English would understand the words Congress chose. "If, in the process of discerning that meaning, we happen to consult grammar and dictionary definitions – along with statutory structure and history – we do so because the rules that govern language often inform how ordinary people understand the rules that govern them." *Niz-Chavez*, 593 U.S. at 169.

At bottom, Suncor's position on appeal is one that asks us to vindicate the purpose of the diligent prosecution bar at the expense of its text. But Congress does not pursue one purpose at the expense of all others. "Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice – and it frustrates rather than effectuates legislative intent simplistically to assume that whatever furthers the statute's primary objective must be the law." *Rodriguez v. United States*, 480 U.S. 522, 526 (1987) (per curiam) (emphasis omitted). Taking Suncor's arguments to their logical horizon, we see no principle limiting us from merely extinguishing the citizen suit provision altogether out of fear that all citizens suits could potentially infringe on EPA's discretion. That is not the judicial function.

At oral argument, both parties agreed that we need not conduct the sameness inquiry in the first instance, although their rationales were quite

different. Oral Arg. at 8:34 (Counsel for the environmental organizations arguing that "the simplest way to resolve this case" would be to decide it on diligence grounds); Oral Arg. at 36:47 (Counsel for Suncor: "None of that needs to be done."). We agree, but for a slightly different reason. The error we find in the district court's judgment is that it did not apply a sameness inquiry at all, but rather applied the bar to claims that were merely "substantially similar," and which were not found in the consent decrees. App. X at 294. The district court applied the wrong legal standard before it even got to diligence. It is this court's usual practice, when a district court applies the wrong standard rather than applying the right standard incorrectly, to remand for the district court to apply the right standard in the first instance. *See, e.g., Kent v. Martin*, 252 F.3d 1141, 1146 (10th Cir. 2001). This practice conserves appellate resources while securing to the trial court its appropriate role as the court of first view. We will adhere to that usual practice here.

At arm's length, it appears that some, but not all, of the environmental organizations' claims will be able to survive the diligent prosecution bar because they are not the same as anything asserted in the consent decrees. Although we acknowledge and appreciate the parties' valiant attempt to assist us and the district court with a battle of the charts, we suspect that on remand, the district court will benefit from the parties more precisely identifying the

37

exact standard or limitation – by regulatory text, if possible – that is at issue in the environmental organizations' suit.

3

Finally, we address "diligent prosecution," although our discussion will be brief. As several courts have held, a district court must assess whether the government's prosecution has been diligent only after identifying the same standard or limitation in a present judicial action. *South River Watershed Alliance*, 69 F.4th at 823–24; *Ohio Valley Environmental Coalition, Inc.*, 808 F. Supp. 2d at 883; *Connecticut Fund*, 631 F. Supp. at 1293. The district court here did not correctly analyze the antecedent issue, so we reverse on that basis. Nevertheless, because it was fully briefed and presented to us, we take this opportunity to provide some guidance to the parties and the district court for how this case should proceed on remand, assuming the district court can identify claims in the citizen suit that are the same as the standards and limitations enforced by the Texas consent decrees.

As observed, *Karr*'s principal holding was that diligent prosecution is presumed. 475 F.3d at 1198 ("high standard," "quite deferential"). The parties are not relieved of this presumption. *United States v. Manzanares*, 956 F.3d 1220, 1225 (10th Cir. 2020). Nor do we see any issue with the proposition that when Congress uses the word "diligence," it does not intend for courts to

second-guess "agency strategy." 475 F.3d at 1197.[9] Thus, the mere fact that a defendant has failed to comply with the CAA is insufficient to overcome the presumption of diligence, *Cebollero-Bertran*, 4 F.4th at 75, and neither is the conclusory assertion, without substantiating evidence or argument, that a stipulated penalties scheme is inadequate, *South River Watershed Alliance*, 69 F.4th at 827.

The district court appeared to lump together and weigh equally all the administrative actions taken by EPA and Colorado, even the ones that imposed no consequences on Suncor and took their existence alone to be sufficient evidence of diligence. But that casual approach is not the proper inquiry. The South Carolina district court's decision in *Laidlaw* is an illustrative example that properly balances a presumption of diligence with a nonetheless searching inquiry. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 890 F. Supp. 470, 489 (D.S.C. 1995) ("[T]he issue presently before the court involves a delicate balance between the Act's preference for governmental enforcement efforts and the recognized policy of allowing private citizens to participate in the enforcement process. Of course, the overriding concern is to assure vigorous enforcement of the CWA to achieve the stated

---

[9] To reiterate, however, the presumption of diligence applies only *after* the defendant can identify the *same* standard or limitation in a present *judicial* action.

goals of the Act."). In other words, this step requires "more than de minimis judicial scrutiny of the agency's performance." Matthew D. Zinn, *Policing Environmental Regulatory Enforcement: Cooperation, Capture, and Citizen Suits*, 21 Stan. Env't L.J. 81, 159 (2002); *see also id.* at 159–60 (suggesting factors like "the severity of any penalty imposed by the agency; the allowance of, or failure to allow, pro-regulatory groups to intervene in the enforcement action; evidence of collusion with the purpose of preempting the suit; and other evidence of agency somnolence" (footnotes omitted)).

On remand, again assuming that the district court reaches the diligent prosecution step with respect to at least some of the environmental organizations' claims, it should conduct a fact-sensitive inquiry of diligence. That inquiry permissibly includes the administrative actions taken by Colorado and EPA after the entry of the consent decrees, but the district court should grant appropriate weight to those actions that impose actual consequences for violating the consent decrees (like stipulated penalties) as opposed to merely threatening consequences, and it should disregard entirely

those actions that are unrelated to violations of the consent decrees.[10] And in conducting that inquiry, it should be mindful of the appropriate standard under Rule 12 and the respective burdens of the parties. *See Brown v. City of Tulsa*, 124 F.4th 1251, 1263–64, 1269 (10th Cir. 2025).

### III

The CAA was the product of extraordinary deliberation and compromise, and in few places more so than in the section where Congress balanced its interest in diligent public prosecution with private citizen suit enforcement. Daniels, Follett, & Davis, *The Making of the Clean Air Act*, at 930–31. We respect that deliberation and compromise best when we adhere to the text enacted in the statute. By deviating from the text in its analysis, we conclude the district court erred. It applied the diligent prosecution bar to standards

---

[10] On appeal, Suncor heavily emphasizes EPA's 2024 Notice of Violation (NOV), *see, e.g.*, Resp. Br. at 24 ("There is complete overlap with regard to the emission standards, pollutants, and equipment that form the basis of the violations alleged in the Complaint and in the 2024 NOV."), but we would be surprised to see the district court place great weight on this NOV. As the environmental organizations note, the NOV was issued only after the environmental organizations gave EPA the statutorily-required notice of their claims and intent to sue. Reply Br. at 25. It would appear counterintuitive to give the NOV, which does not itself appear to impose any consequences, much preclusive effect, when its existence is owed to the environmental organizations' investigation and litigatory efforts. And in any event, the district court must give preclusive effect *only* to the *same* standards or limitations as are found in the *consent decrees*. The NOV is relevant only insofar as it diligently prosecutes *those* standards or limitations.

and limitations not found in the consent decrees, either because they were found in other, post-consent decree administrative actions or because they were similar to, but not the same as, the standards or limitations found in both the judicial and administrative actions. Both bases for applying the diligent prosecution bar were error.

On remand, the district court should hold the appropriate party to the burden of identifying, with precision, those claims in the citizen suit that are the same as the standards and limitations in the consent decree. Only then may Suncor rely on the presumption of diligence. We REVERSE and REMAND for further proceedings consistent with this opinion.